STANLEY E. WOODWARD, JR.
Associate Attorney General
JOHN ADAMS
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
202-514-2000 (telephone)
Stanley.Woodward@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MUSICAL.LY, a corporation; and MUSICAL.LY, INC., a corporation,<br><br>Defendants. | Case No. 2:19-cv-1439-ODW-RAO<br><br>**THE UNITED STATES' NOTICE OF CONSENT MOTION AND CONSENT MOTION TO VACATE STIPULATED ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Fed. R. Civ. P. 60(b)(5) & (6)<br>Hearing Date: September 21, 2026<br>Time: 1:30 p.m.<br>Place: Felicitas and Gonzalo Mendes U.S. Courthouse, Los Angeles<br>Court Room 5D, 5th Floor<br><br>Honorable Otis D. Wright II<br>United States District Judge |

## CONSENT NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 21, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, the United States will and hereby does move this Court pursuant to Rules 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure for an order vacating the Stipulated Order entered in this action on March 27, 2019. *See* Dkt. 10.

## COMPLIANCE WITH LOCAL RULE 7-3

This motion is made following a telephonic meet and confer between counsel pursuant to L.R. 7-3 Defendants consent to this motion.

## CONSENT MOTION TO VACATE STIPULATED ORDER

The United States moves to vacate the Stipulated Order under Rules 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure. Relief is warranted due to significant changes in circumstances and because the permanent injunction in the Stipulated Order is no longer equitable or in the public interest.

This motion is based upon the above Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other matters as may be presented to this court at the time of the hearing on the motion. Pursuant to Local Rule 7-15, Defendants waive oral argument.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
Associate Attorney General
JOHN ADAMS
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
202-514-9500 (telephone)
Stanley.Woodward@usdoj.gov

*Attorneys for the United States*

## TABLE OF CONTENTS

INTRODUCTION .......... 2

BACKGROUND .......... 3

I. The February 2019 Complaint .......... 3

II. The March 2019 Stipulated Order .......... 5

III. Intervening Developments Since 2019 .......... 5

A. Prior Disputes Involving Foreign-Controlled Entities Before 2025 .......... 5

B. New American Ownership of TikTok in 2026 .......... 6

C. August 2026 Settlement .......... 8

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 10

I. Vacatur of the Stipulated Order is Warranted Under the Deferential Standard to Rule 60(b) for Consent Motions Involving the United States .......... 10

II. Vacatur of the Stipulated Order Is Also Warranted Under a Less Deferential Standard to Rule 60(b)(5) .......... 13

III. In the Alternative, Vacatur of the Stipulated Order Is Warranted Under Rule 60(b)(6) .......... 15

IV. The Federal Rules of Civil Procedure Further Support a Flexible, Deferential Standard Here .......... 17

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. City of Tucson*,
761 F.3d 1005 (9th Cir. 2014) ....................15

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ....................18

*Brown v. Bd. of Educ.*,
349 U.S. 294 (1955)....................14

*Chisom v. Louisiana ex rel. Landry*,
116 F.4th 309 (5th Cir. 2024) ....................10

*Conservation Nw. v. Sherman*,
715 F.3d 1181 (9th Cir. 2013) ....................9

*Ecological Rights Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000) ....................15

*Flores v. Rosen*,
984 F.3d 720 (9th Cir. 2020) ....................9

*Frew v. Hawkins*,
540 U.S. 431 (2004)....................12

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000)....................15

*FTC v. Enforma Nat'l Prods., Inc.*,
362 F.3d 1204 (9th Cir. 2004) ....................9

*Heckler v. Cheney*,
470 U.S. 821 (1985)....................10

*Henson v. Fid. Nat'l Fin., Inc.*,
943 F.3d 434 (9th Cir. 2019) .................... 9, 16, 17

*Horne v. Flores*,
557 U.S. 433 (2009)........................................................................ 3, 8, 9, 12, 15

*In re Syncor ERISA Litigation*,
516 F.3d 1095 (9th Cir. 2008) ......................................................................18

*Keyes v. Sch. Dist. No. 1, Denver*,
895 F.2d 659 (10th Cir. 1990) ......................................................................12

*Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*,
564 F.3d 1115 (9th Cir. 2009) ............................................................. 13, 15

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
921 F.2d 1371 (8th Cir. 1990) ......................................................................18

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ............................................................. 16, 17

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992)..................................................................................9, 14

*SEC v. Citigroup Global Markets Inc.*,
752 F.3d 285 (2d Cir. 2014) ................................................................ 10, 17

*SEC v. Randolph*,
736 F.2d 525 (9th Cir. 1984) ............................................................ 2, 9, 10

*Seila Law LLC v. Consumer Financial Protection Bureau*,
591 U.S. 197 (2020)........................................................................................12

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025).....................................................................................6, 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................10

*United States v. Ayala-Bello*,
995 F.3d 710 (9th Cir. 2021) ............................................................. 12, 13

*United States v. ByteDance Ltd.*,
No. 2:24-cv-06535 (C.D. Cal.) .......................................................... 3, 6, 8
*United States v. Coeur d'Alenes Co.*,
767 F.3d 873 (9th Cir. 2014) ..........................................................................9
*United States v. Montrose Chem. Corp. of Cal.*,
50 F.3d 741 (9th Cir. 1995) ............................................................................9
*United States v. Sparks*,
685 F.2d 1128 (9th Cir. 1982) ..................................................................9, 16
*Warran v. City of Chico*, No. 2:21-cv-00640,
2025 WL 974068-DAD-DMC (E.D. Cal. Mar. 31, 2025) ..................................13
*Washington v. Moniz*, No. 2:08-cv-05085-RMP,
2015 WL 12643792 (E.D. Wash. May 11, 2025)...............................................13

**Statutes**

15 U.S.C. § 45(a) .....................................................................................................3
15 U.S.C. § 57(a)(d)(3) .............................................................................................3
15 U.S.C. § 6502(c) ...................................................................................................3
Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. 118-50, div. H, 138 Stat. 955 ......................................................... 2, 6, 13

**Executive Orders and Regulations**

16 C.F.R. § 312.10 ...................................................................................................5
16 C.F.R. § 312.4(b) .................................................................................................5
16 C.F.R. § 312.4(d) .................................................................................................5
16 C.F.R. § 312.5(a)(1) .............................................................................................5
16 C.F.R. § 312.6(a)(2) .............................................................................................5

*Addressing the Threat Posed by TikTok*, Exec. Order No. 13,942, 3 C.F.R. 412 (2021) .....6

*Saving TikTok While Protecting National Security*, Exec. Order 14,352, 90 Fed. Reg. 47219 (Sept. 25, 2025) .....7, 14

**Other Authorities**

*Announcement from the new TikTok USDS Joint Venture LLC*, TikTok.com (Jan. 23, 2026) .....8

H.R. Rep. No. 118–417 (2024) .....6

**Rules**

Fed. R. Civ. P. 16 .....17

Fed. R. Civ. P. 26 .....17

Fed. R. Civ. P. 60(b)(5) .....2, 3, 8, 13

Fed. R. Civ. P. 60(b)(6) .....2, 3, 8, 15, 16

Fed. R. Civ. P. 68(d) .....17

**MEMORANDUM OF POINTS AND AUTHORITIES**

The United States respectfully moves this Court under Rules 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure for an order vacating the Stipulated Order dated March 27, 2019. *See* Dkt. 10.

**INTRODUCTION**

Seven years ago, this Court entered the Stipulated Order, which requires Defendants to permanently follow the Children's Online Privacy Protection Rule ("COPPA Rule"), among other requirements. Dkt. 10 at 7–8. But Defendants must follow the law even in the absence of the Stipulated Order. The remaining requirements in the Stipulated Order go beyond what the law itself requires. And although those requirements may once have seemed prudent to ensure compliance with the law, they now subject a newly formed company with new technologies and new compliance commitments—TikTok USDS Joint Venture LLC (TikTok US)—to requirements not independently imposed by Congress. The United States now seeks to sunset the Stipulated Order.

Where the United States, acting in its enforcement discretion and without objection from the other party, seeks vacatur of a consent decree, courts should approve the request unless it would be "unfair, inadequate or unreasonable." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (citations omitted). None of those circumstances applies here because the Stipulated Order is no longer necessary to serve the public interest.

The pre-2019 conduct giving rise to the Stipulated Order concerns behavior from foreign-owned companies. In order to continue operating in the United States, Defendants' successors, TikTok Ltd. and TikTok Inc. (TikTok), had to be divested of foreign control. *See* Pub. L. 118-50, div. H, 138 Stat. 955. In compliance with that requirement, the company established American-owned TikTok US, which now controls TikTok products and services in the United States—including those at issue

in the current order. Though new and American, this entity is subject to the years' old Stipulated Order due to predecessor liability. With a fundamental restructuring of a company from foreign controlled to domestic owned—as required by the federal government—as well as new trust and safety commitments by the new owners, equity and justice under Rule 60(b)(5) and 60(b)(6) warrant vacatur of the Stipulated Order that covers predecessor liability not found against TikTok US.

The United States also settled outstanding liability with TikTok US arising from this case and a similar action against its predecessor in *United States v. ByteDance Ltd*., No. 2:24-cv-06535 (C.D. Cal.). The settlement requires TikTok US to pay a substantial payment in connection with the allegations in these cases. The terms of the settlement are in the best interests of the United States. That the United States is requesting relief here by consent, in connection with the settlement agreement, is a critical factor this Court must consider under the "flexible approach" courts apply to Rule 60(b) motions. *Horne v. Flores*, 557 U.S. 433, 450 (2009).

## BACKGROUND

### I. The February 2019 Complaint

Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of their personal information. Compl. ¶ 5. COPPA directed the Federal Trade Commission to promulgate a rule implementing COPPA. *Id.* The Commission promulgated the COPPA Rule in November 1999. *Id.* The Commission promulgated revisions to the rule that went into effect on July 1, 2013. *Id.* Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57(a)(d)(3), a violation of the COPPA Rule constitutes an unfair or deceptive act or practice in violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.* ¶ 5. The COPPA Rule requires any operator of a commercial website or online service to meet requirements prior to collecting, using, or disclosing personal information. *Id.* ¶ 6.

On February 27, 2019, the United States, acting upon notification and on referral from the Federal Trade Commission, sued Defendants for violating several provisions of the FTC Act, COPPA, and the COPPA Rule. As described in the Complaint, beginning in 2014, Defendants operated a video social networking app called Musical.ly App. *Id*. ¶ 12. To register for the Musical.ly App, users had to provide personal and contact information. *Id*. ¶ 13. "Many users choose to include an age in their short bio, which is part of their Musical.ly App profiles." *Id*. ¶ 14. Beginning in July 2017, Defendants requested "age information from new users during the registration process for a Musical.ly App account, and prevent[ed] users who indicate[d] that they [were] under 13 from creating accounts." *Id*.

The Musical.ly App provided a platform for users to create videos and synchronize them with music or audio clips. *Id.* ¶ 15. In addition, the App provided a platform for users to connect and interact with other users. *Id.* ¶ 16. Users could comment on the videos of other users and had the option to "follow" other accounts. *Id.* Popular users might have had millions of "fans." *Id.* A user's account was set to public by default, which meant that a user's bio, username, profile picture, and videos were public and searchable by other users. *Id.* Users also had the option to set their accounts to "private." *Id*. Until October 2016, the App had a feature where a user could tap on a "my city" tab, which provided the user with a list of other users within a 50-mile radius, and with whom the user could connect and interact with by following the user or sending direct messages. *Id*. ¶ 18.

The Complaint alleged that "[a] significant percentage of Musical.ly users [were] children under 13." *Id*. ¶ 19. The Complaint also alleged that "Defendants were aware that children were using the App," *id*. ¶ 20, and that "Defendants [had] received thousands of complaints from parents that their child under 13 years old had created a Musical.ly App account without their knowledge." *Id*. ¶ 21.

The United States claimed that Defendants violated the COPPA Rule by (1)

failing to provide the user notice of data collection practices, 16 C.F.R. § 312.4(d); (2) failing to provide the users' parents notice of data collection practices, 16 C.F.R. § 312.4(b); (3) failing to obtain parental consent, C.F.R. § 312.5(a)(1); (4) failing to delete personal information when requested, 16 C.F.R. § 312.6(a)(2); and (5) retaining personal information for longer than reasonably necessary, 16 C.F.R. § 312.10. *See* Compl. ¶ 31. Due to these allegations, the United States requested that this Court award civil penalties, a permanent injunction, and other equitable relief. *Id*. at 10.

## II. The March 2019 Stipulated Order

This Court entered the Stipulated Order on March 27, 2019. The Stipulated Order contains multiple forms of relief: (1) a permanent injunction concerning the collection of personal information from children consistent with extant requirements under the COPPA Rule, *id*. at 7–8 ("Defendants . . . are hereby permanently restraining and enjoined from violating [the COPPA Rule.]"); (2) an order to delete children's personal information and treatment of accounts existing at the time of the Stipulated Order, *id*. at 8–10; (3) a monetary judgment in the amount of $5.7 million, *id*. at 10, which is almost two times larger than the highest COPPA civil penalty ever paid at the time; (4) additional monetary provisions, *id*. at 10–11; (5) short-term reporting requirements, *id*. at 11; (7) long-term compliance reporting, *id*. at 12–14 (requiring, for example, sworn compliance reports for ten years); (8) long-term recordkeeping requirements, *id*. at 14; and (9) compliance monitoring, *id*. at 15 (requiring, for example, government interviews of "any employee or other person affiliated with Defendants who has agreed to such an interview").

## III. Intervening Developments Since 2019

### A. Prior Disputes Involving Foreign-Controlled Entities Before 2025

The allegations in the Complaint concern conduct from 2014 to 2018 related to the Musical.ly App. *See* Compl. ¶¶ 12, 23. In December 2017, ByteDance Ltd. acquired Defendants. *Id*. ¶ 23. In August 2018, the Musical.ly App was merged with

the TikTok app under TikTok. *Id*.

In August 2024, the United States sued ByteDance and TikTok for similar allegations related to violating COPPA, the COPPA rule, and the FTC Act. *See* Compl., *ByteDance Ltd*., No. 2:24-cv-06535, Dkt. 1 (C.D. Cal. Aug. 2, 2024). The United States alleged that they "knowingly allowed children under 13 to create and use TikTok accounts without their parents' knowledge or consent, . . . collected extensive data from those children, and . . . failed to comply with parents' requests to delete their children's accounts and personal information." *Id*. ¶ 2. For relief, the United States requested an injunction and civil penalties. *Id*. at 29.

At the time of these disputes, "TikTok Inc.'s ultimate parent company [was] ByteDance Ltd., a privately held company that has operations in China." *TikTok Inc. v. Garland*, 604 U.S. 56, 63 (2025). "ByteDance Ltd. own[ed] TikTok's proprietary algorithm, which [was] developed and maintained in China." *Id*. That company was "also responsible for developing portions of the source code that [ran] the TikTok platform." *Id*. "ByteDance Ltd. [was] subject to Chinese laws that require[d] it to 'assist or cooperate' with the Chinese Government's 'intelligence work' and to ensure that the Chinese Government [had] 'the power to access and control private data' the company holds." *Id*. at 63–64 (quoting H.R. Rep. No. 118–417 (2024)).

**B. New American Ownership of TikTok in 2026**

In August 2020, President Trump issued an executive order finding that "the spread in the United States of mobile applications developed and owned by companies in [China] . . . threaten[s] the national security, foreign policy, and economy of the United States." *Id*. at 64 (citing Exec. Order No. 13,942, 3 C.F.R. 412 (2021)). The President also found that TikTok "automatically capture[d] vast swaths of information from its users." *Id*. Against this backdrop, Congress enacted the Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. 118–50, div. H, in 2024, "making it unlawful for any entity to provide certain services to

'distribute, maintain, or update' a 'foreign adversary controlled application' in the United States." *Id.* at 65–66 (describing the Act). TikTok was subject to this law.

In September 2025, the President issued another executive order entitled *Saving TikTok While Protecting National Security*, Exec. Order 14,352, 90 Fed. Reg. 47219 (Sept. 25, 2025). The order explains that the Foreign Adversary Controlled Applications Act empowers the President to determine whether a company has undergone a "qualified divestiture" to remove it from the Act's prohibitions just described. *Id*. § 1. To achieve a "qualified divestiture," the company must execute a transaction that would result in the application no longer being controlled by a foreign adversary and that would preclude formerly affiliated entities from maintaining an "operational relationship" with the application's operations in the United States. *Id*. The President received a plan for TikTok to undergo a qualified divestiture as outlined in a document called the Framework Agreement. *Id*.

The Framework Agreement provides that TikTok will be operated by a newly established joint venture based in the United States—creating TikTok US. *Id*. TikTok US "will be majority-owned and controlled by United States persons and will no longer be controlled by any foreign adversary, since ByteDance Ltd. and its affiliates will own less than 20 percent of the entity, with the remainder being held by certain investors." *Id*. The "new joint venture will be run by a new board of directors and subject to rules that appropriately protect Americans' data and our national security." *Id*. The President thus "determined that the proposed divestiture would allow the millions of Americans who enjoy TikTok every day to continue using it while also protecting national security." *Id*. The President also made findings in support of the Framework Agreement. *See, e.g.*, *id*. § 2(b)(iii) (stating that the divestiture puts the operation of the algorithms and code, as well as content-moderation decisions, under the control of the new joint venture).

In January 2026, TikTok US announced that it had completed the qualified

divestiture required by federal law and the President's executive order. *See Announcement from the new TikTok USDS Joint Venture LLC*, TikTok.com (Jan. 23, 2026), *available at* https://perma.cc/M46R-6H2Z. Specifically, TikTok USDS Joint Venture LLC announced that it had been created in compliance with U.S. regulatory requirements and with a "mandate" to "secure U.S. user data, apps and the algorithm through comprehensive data privacy and cybersecurity measures." *Id.*

**C. August 2026 Settlement**

Following a change in ownership, the federal government reached a settlement agreement with TikTok US in August 2026. As described in the settlement agreement, the United States determined that the Stipulated Order was directed at the legacy operations of Musical.ly, a predecessor of TikTok US thrice removed, and that significant and material changes in factual conditions render the continued prospective enforcement of the Stipulated Order inequitable, unnecessary, and no longer in the public interest. Moreover, the United States determined that the comprehensive resolution of the allegations related to this case and *ByteDance*, No. 2:24-cv-06535, on the terms set forth in the settlement agreement, satisfies the remedial objectives of the United States and serves the public interest. TikTok US paid a significant sum of money as part of the settlement.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b)(5) provides that a court "may relieve a party . . . from a final judgment, order, or proceeding" when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The "equitable" clause allows "a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks and citation omitted). Rule 60(b)(6) also permits relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This rule allows the district

court to vacate judgments "'whenever such action is appropriate to accomplish justice.'" *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (quoting *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982)).

Where the United States seeks to modify or vacate a consent decree for institutional reform, over the objection of the other party, courts place the burden on the government to establish a significant change in factual conditions or law. *See, e.g.*, *Flores v. Rosen*, 984 F.3d 720, 740–41 (9th Cir. 2020); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). Once the government carries its burden to show that changed circumstances warrant relief, "a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Horne*, 557 U.S. at 447 (citation omitted).

Where the United States, acting in its enforcement discretion and with consent from the other party, seeks to sunset a consent decree imposing obligations on a private party, courts should review such a proposed modification under the same standard as when the government proposed the consent decree in the first instance—approving the request unless it would be "unfair, inadequate or unreasonable." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

Such a deferential standard is consistent with Ninth Circuit precedent and separation of powers principles. "A consent decree is a hybrid; it is both a settlement and an injunction." *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013); *accord FTC v. Enforma Nat'l Prods., Inc.*, 362 F.3d 1204, 1218 (9th Cir. 2004) (same). At the time of approval, "courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Randolph*, 736 F.2d at 529 (citations omitted). Indeed, courts must offer "tremendous deference . . . to the government's determination that a consent decree is fair and proper." *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 879 (9th Cir. 2014); *see also United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746

(9th Cir. 1995) (stating that "a district court reviewing a proposed consent decree 'must refrain from second-guessing the Executive Branch'"). The same deferential standard applies when the United States, with the consent of all parties, seeks to modify or vacate the consent decree by sunsetting the judicial supervision requested at the time of the initial settlement.

Under this standard, courts must be mindful that "[t]he initial determination" whether the modification of the consent decree is in the public interest "is best left" to the federal government, "and its decision deserves [the court's] deference." *Randolph*, 736 F.2d at 530; *see also SEC v. Citigroup Global Markets Inc.*, 752 F.3d 285, 296–98 (2d Cir. 2014) ("The job of determining whether the proposed [federal] consent decree best serves the public interest . . . rests squarely with the [federal government], and its decision merits significant deference."). In reviewing this motion to vacate, then, the "focus of the inquiry" is "on ensuring the consent decree is procedurally proper." *Id*. at 295. This Court also must "tak[e] care not to infringe on the [United States'] discretionary authority to settle on a particular set of terms." *Id.*

## ARGUMENT

### I. Vacatur of the Stipulated Order Is Warranted Under the Deferential Standard to Rule 60(b) for Consent Motions Involving the United States

The United States determined that the years' old Stipulated Order to follow the law is no longer necessary to serve the public interest in view of materially changing factual circumstances and the settlement of separate litigation. *See Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 316 (5th Cir. 2024) ("consent decrees are 'not intended to operate in perpetuity.'"). This is quintessentially an executive judgment, because "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021); *see also Heckler v. Cheney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to

prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.") (citations omitted).

Here, the United States properly and reasonably exercised its prosecutorial discretion to resolve outstanding liabilities for conduct concerning a foreign-owned company. The Stipulated Order was directed at conduct by two TikTok US predecessor companies, Musical.ly and Musical.ly, Inc. The Stipulated Order resulted from allegations about data collection practices on the Musical.ly app between 2014 and 2018—not the TikTok platform as it exists and operates today, including current use of compliance commitments and tools not alleged in the Complaint.

According to a sworn declaration by an employee of TikTok (US), since the Stipulated Order was entered in 2019, TikTok has made investments in systems to prevent children under 13 from accessing its main platform. Declaration of Camerin Hunt (Ex. A) ¶ 4. TikTok employs an age gate that requires every user who joins the platform to enter their date of birth. *Id.* While TikTok once permitted users to employ third-party credentials from platforms like Google or Facebook to create an account without passing through its own age gate, TikTok has since eliminated that policy and requires all users to pass through TikTok's age gate. *Id.* In order to ensure that all users had gone through TikTok's age gate, in 2023 and 2024, TikTok implemented "'Age Gate 100,' an initiative that prompted every user for whom TikTok did not have a date of birth to pass through TikTok's age gate." *Id.* TikTok banned any user who failed to respond to the prompt or who entered an age under 13. *Id*.

Beyond the age gate, TikTok has developed age-moderation systems that identify and remove children under 13 from the platform in the event that they are identified to have bypassed the age gate by lying about their age. *Id*. ¶ 5. TikTok uses artificial intelligence "to scan biographies, captions, on-screen text, audio subtitles, and direct messages to surface potential underage signals." *Id*. ¶ 6. Once an account is flagged as potentially belonging to someone under 13, TikTok employs

two levels of human moderation to review accounts suspected of being under the age of 13. *Id*. Over time, TikTok "has devoted an increasing amount of resources to such efforts and today employs hundreds of personnel training in underage moderation." *Id*. "As a result of this process, TikTok systematically bans and deletes the data of tens of thousands of suspected under-13 accounts." *Id*.

The existence of these processes "warrant[s] reexamination of the original judgment." *Horne v. Flores*, 557 U.S. 433, 448 (2009) (noting that "changes in the nature of the underlying problem" and "new policy insights" may warrant reconsideration). Upon reexamination, the United States decided to settle. The agreement requires TikTok US to pay a significant amount of money for liabilities directed at conduct by predecessor companies. A monetary penalty is a durable remedy well within the prosecutorial discretion of the Executive Branch. *See, e.g.*, *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 219 (2020) (noting that the "authority" to "seek daunting monetary penalties against private parties on behalf of the United States in federal court" is "a quintessentially executive power").

"[T]he government [also] has a legitimate interest in managing its prosecutorial resources." *United States v. Ayala-Bello*, 995 F.3d 710, 716 (9th Cir. 2021). The Stipulated Order here imposes indefinite federal supervision of a new company that is already subject to federal law and has transformed into a new U.S. entity, with new compliance commitments backed by new U.S. ownership. Continuing supervision of the decree could deprive the federal government of control over its discretionary functions. *See generally Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (noting that consent decrees that are "not limited to reasonable and necessary implementations of federal law" may "improperly deprive future officials of their designated legislative and executive powers"); *Keyes v. Sch. Dist. No. 1, Denver*, 895 F.2d 659, 668–69 (10th Cir. 1990) (striking portion of consent decree that did "no more than require the [defendant] to obey the law"). The penalty payment and new

commitments obviate the need for the United States (and this Court) to devote resources *indefinitely* to ensure that a new company is merely complying with the law and following reporting requirements. In balancing the costs of "time and resources" to ensure indefinite compliance, the United States decided to settle this unique case involving a fundamentally new company. *Ayala-Bello*, 995 F.3d at 716. This Court should respect that prosecutorial decision and grant this motion.

## II. Vacatur of the Stipulated Order Is Also Warranted Under a Less Deferential Standard for Rule 60(b)(5)

Even if this Court applies a less deferential standard used in the context of an opposed motion in an institutional-reform case, the Stipulated Order still should be vacated under Rule 60(b)(5) because "applying it prospectively is no longer equitable" due to changing factual circumstances. When asserting a change in facts in this circumstance, the movant must show that (1) a significant change in factual conditions "occurred *after* execution of the decree"; (2) "the change was not anticipated at the time it entered into the decree"; (3) "the changed factual circumstances make compliance with the consent decree . . . detrimental to the public interest"; and (4) the proposal is "suitably tailored to resolve the problems created by the changed . . . conditions." *Warran v. City of Chico*, No. 2:21-cv-00640, 2025 WL 974068-DAD-DMC, at *9 (E.D. Cal. Mar. 31, 2025) (quoting *Washington v. Moniz*, No. 2:08-cv-05085-RMP, 2015 WL 12643792, at *7 (E.D. Wash. May 11, 2025)); *accord Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115 (9th Cir. 2009). The United States satisfies each condition.

With respect to the first and second factors, significant and unanticipated events occurred years after this Court entered the Stipulated Order. In 2024, Congress enacted the Protecting Americans from Foreign Adversary Controlled Applications Act primarily to address data collection practices that are also relevant to conduct leading to the Stipulated Order. Pub. L. 118–50, div. H, 138 Stat. 955; *see*

*TikTok*, 604 U.S. at 74 ("The Act's prohibitions and divestiture requirement are designed to prevent China—a designated foreign adversary—from leveraging its control over ByteDance Ltd. to capture the personal data of U. S. TikTok users."). The Act banned social networking services defined as a "foreign adversary controlled application" if the President, following certain processes, deemed them a national security threat. *Id*. at 66. ByteDance and TikTok, due to their foreign control, fell within the Act. *Id.*

But the Act does not apply if the foreign adversary-controlled application is divested and no longer considered to be controlled by a foreign adversary. *Id*. In September 2025, the President adopted the Framework Agreement that made such a divestment. *See* § 1, Exec. Order 14,352, 90 Fed. Reg. 47219 (Sept. 25, 2025) (directing that TikTok US "will be majority-owned and controlled by United States persons and will no longer be controlled by any foreign adversary"). The divesture put Americans in control of TikTok US, representing a fundamental change. And the new ownership structure resulting from divestiture could not have been "actually . . . anticipated" in 2019 when this Court entered the Stipulated Order. *Rufo v. Inmates of Suffolk Cty. Jail,* 502 U.S. 367, 385 (1992).

As to the third factor, continuing with the Stipulated Order would be detrimental to the public interest, as explained above. The "public interest" factor considers the "allocation of powers within our federal system" when the government is a party to a Rule 60(b) motion. *Id.* at 392 (citation omitted). Though *Rufo* and its progeny involve "institutional reform litigation," such as in jails or schools, the "flexible" standard for consent decrees adopted in that context applies with equal force here. *Id.* at 392–93. Just as courts should "defer to local government administrators, who have the 'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform," this Court should defer to the United States and its exercise of prosecutorial discretion here. *Id*. at 392 (quoting *Brown v. Bd. of*

*Educ.*, 349 U.S. 294, 299 (1955)). Such a "flexible approach" to Rule 60(b) is consistent with ensuring that "responsibility for discharging [federal] obligations is returned promptly to the [Executive Branch] and its officials' when the circumstances warrant." *Horne*, 557 U.S. at 450 (citation omitted).

For the fourth factor, vacatur here is "suitably tailored to resolve the problems created by the changed … conditions," because the United States obtained a durable remedy. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120 (citation omitted). A "durable remedy" exists when "continued enforcement of the order is" unnecessary. *Horne*, 557 U.S. at 450. The obligation of courts to "vigilantly enforce federal law" by "awarding necessary relief" is no longer implicated when another remedy exists. *Id.*

For reasons explained, the settlement provides a durable remedy that no longer requires the Stipulated Order. The divestiture has allowed the new U.S. entity to make new compliance commitments. And a significant payment clearly has a deterrent effect against future violations. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("We have recognized on numerous occasions that 'all civil penalties have some deterrent effect.'" (citations omitted)); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000) (recognizing that "[m]onetary penalties can serve their general deterrent function"). Monetary settlements are also an effective form of final resolution that avoid the need for the government to expend more resources. *See generally Arizona v. City of Tucson*, 761 F.3d 1005, 1011 (9th Cir. 2014) (reasoning that "settlements . . . reduce the inefficient expenditure of public funds on lengthy litigation").

## III. In the Alternative, Vacatur of the Stipulated Order Is Warranted Under Rule 60(b)(6)

In the alternative, the Court should vacate the Stipulated Order under Rule 60(b)(6). This rule "is a grand reservoir of equitable power that allows courts to grant relief from a final judgment for 'any' reason that 'justifies relief.'" *Henson v. Fid.*

*Nat'l Fin., Inc.*, 943 F.3d 434, 440 (9th Cir. 2019) (quoting Fed. R. Civ. P. 60(b)(6)). This provision, in other words, "gives the district court power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" *Id*. at 443 (quoting *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982)). Courts must consider the "surrounding circumstances" to determine whether relief under Rule 60(b)(6) "is appropriate in the furtherance of justice." *Id*. This "case-by-case inquiry requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id*. at 444 (citation omitted).

In *Phelps v. Alameida*, the court analyzed the standard for a Rule 60(b) motion that sought relief from the dismissal of a habeas petition due to a change in the law. 569 F.3d 1120 (9th Cir. 2009). The court identified certain factors (the *Phelps* factors) as being "well-reasoned principles that should guide courts in exercising their discretion under Rule 60(b)(6)." *Id*. at 1140. *Henson* extended those factors outside of the habeas context. *See Henson*, 943 F.3d at 445–55.

According to *Henson*, the non-exhaustive factors courts should consider under Rule 60(b)(6) are (1) change in the law, (2) diligence in pursuing relief, (3) reliance interest in the finality of the case, (4) delay, (5) relationship between the original judgment and the change in the law, (6) concerns of comity, (7) additional considerations, and (8) weighing all relevant considerations. *See id*. These factors, however, are not meant to "impose a rigid or exhaustive checklist" because Rule 60(b)(6) is a "grand reservoir of equitable power." *Id*. at 445. Thus, when a "court is faced with applying [the Ninth Circuit's] previously[] discussed Rule 60(b)(6) factors in an entirely new context, the court should assess how that different context might alter the calculus of the factors' application, and whether those factors adequately capture all of the relevant circumstances." *Id*. at 446.

In this case, the factors militate in favor of granting the motion. First, there

are no reliance interests in the finality of this case (Factor 3). *See Henson*, 943 F.3d at 451 (analyzing finality in the context of whether there are "past effects" of the "judgment that would be disturbed if the case were reopened for consideration on the merits"). This motion is unopposed because all agree that intervening developments justify vacatur. Second, there is no delay (Factor 4). The United States acted promptly to vacate after these intervening events. As to the other *Phelps* factors, they are either neutral (Factors 2 and 6) or inapplicable (Factors 1 and 5).

The types of "additional considerations" courts within the Ninth Circuit consider further weigh in favor of granting the motion. *Henson*, 943 F.3d at 453–54. In *Phelps*, the court weighed "considerations of comity" between federal and state court when analyzing the Rule 60(b)(6) motion in the habeas context. 569 F.3d at 1139. Comity demands that the federal court respect and defer to state courts on certain matters. Those same principles apply with respect to the prosecutorial discretion exercised by the Executive Branch here. *See SEC v. Citigroup*, 752 F.3d 285, 296–98 (2d Cir. 2014). And, for reasons explained above, those principles are dispositive here. *See supra* § I. This Court should defer to the United States and its exercise of prosecutorial discretion to resolve outstanding liability arising from conduct of a foreign-owned company that is now an American-owned one with new compliance commitments and new technologies not alleged in the Complaint.

**IV. The Federal Rules of Civil Procedure Further Support a Flexible, Deferential Standard Here**

Finally, granting the motion supports the letter and spirit of the Federal Rules of Civil Procedure, which encourage parties to settle. *See, e.g.*, Fed. R. Civ. P. 16 (requiring pre-trial conferences with the purpose of facilitating settlement); Fed. R. Civ. P. 26 (governing discovery); Fed. R. Civ. P. 68(d) (requiring a party to pay certain costs if the party refused a settlement that was more favorable than the final judgment). Consistent with the goal of encouraging settlement, courts should allow

parties to obtain the benefit of their bargain. *See, e.g.*, *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101–03 (9th Cir. 2008) (discussing the "strong judicial policy that favors settlements" and concluding that the district court abused its discretion by "refusing to vacate the final judgments" under Rule 60(b)(6) in light of a settlement); *see also Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors agreements" and "settlement of any litigation[] is basically a bargained exchange between the litigants," so "courts are generally without authority to require parties to comply with a 'settlement' different from their own agreement.") (quoting *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980)).

The parties here negotiated the ability to vacate the Stipulated Order with approval from this Court. Vacatur cannot disturb COPPA, the COPPA Rule, or the FTC ACT—all of which TikTok US must sill follow—and grants the parties the flexibility they intended. Denying the motion could, in the future, deter public parties from settling for fear that they will not have the full benefit of the bargain they made.

**CONCLUSION**

For these reasons, this Court should grant the motion and vacate the Stipulated Order.

August 21, 2026

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
Associate Attorney General
JOHN ADAMS
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
202-514-9500 (telephone)
Stanley.Woodward@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, I served a copy of the foregoing pleading on all counsel of record by means of the CM/ECF electronic filing system.

*/s/ Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION PURSUANT TO LOCAL RULE 11-6.1.**

The undersigned, counsel of record for the United States, certifies that this brief contains 5,553 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: August 21, 2026

*/s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr.